

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

EON STREAMS, INC., )
)
    Plaintiff, )
)
vs. ) Civil Action No.: 3:05 cv-578
) Jury Demand
CLEAR CHANNEL COMMUNICATIONS, INC., )
)
)
)
    Defendant. )

## COMPLAINT

Eon Streams, Inc. ("EON") states its Complaint against Clear Channel Communications, Inc. ("Clear Channel") as follows:

1.     EON is a Tennessee corporation with its principal place of business in Knoxville, Tennessee.

2.     Clear Channel is a Texas corporation with its principal place of business in Texas.

3.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this is an action between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.     EON provides streaming services to hosts of Internet websites. Clear Channel, through its subsidiaries, operates a nationwide network of approximately 1200 radio broadcast stations. "Streaming" is a term used to describe the process by which an audio-video recording is made available to a visitor to an Internet website.

5. A division of Clear Channel is or was Clear Channel Radio and a division of Clear Channel Radio is or was Clear Channel Online Music & Radio ("CCOMR").

6. CCOMR as a Clear Channel division engages in the business of bringing radio listeners online to the Internet to listen to Clear Channel's network of radio broadcast stations.

7. In order for Clear Channel's network radio broadcast stations to provide its content on the Internet, Clear Channel needed a streaming services provider such as EON.

8. Brian Parsons ("Parsons"), in October 2003 and thereafter, was a vice-president with the CCOMR division of Clear Channel and he was located in Covington, Kentucky. Parsons also joined the Board of Directors of EON and participated in EON board meetings.

9. In October 2003, Stephen W. Newman ("Newman"), EON's chief executive officer, visited Clear Channel's offices in Covington and met with Parsons and others from Clear Channel's CCOMR division.

10. Thereafter, in 2004, Clear Channel began using EON as its streaming services provider, and by later that year, EON was streaming approximately 30 of Clear Channel's network radio broadcast stations. EON and Clear Channel entered into a Services Agreement effective January 27, 2004, for these streaming services.

11. The Services Agreement that was effective January 27, 2004, provided that it could be cancelled upon 30-days notice to EON.

12. In 2004, Clear Channel, through Parsons, and EON discussed the development by EON of an ad insertion advertising system to insert advertising into Clear Channel's streamed content for the various network stations.

13. These discussions culminated in an October 12, 2004 draft Letter of Agreement sent from EON to Parsons at Clear Channel.

14. In that letter, a copy of which is attached as Exhibit A (the "Letter Agreement"), EON proposed to deliver defined streaming media services, including the development of an ad insertion advertising system, to Clear Channel in exchange for the parties entering into a new services agreement for a three-year minimum period to commence January 1, 2005.

15. On October 19, 2004, Parsons sent an email to Newman and others, in which he stated that he "wanted to make sure the deal points were put into and verified via email first…"

16. Kim Johnson, a Vice President of Sales and Marketing for Clear Channel and its CCOMR division or its CCOMR division, clarified in an email later that day that EON would receive a 15% commission on advertising network sales initiated by EON. A copy of the emails described in paragraph 15 and the email described in this paragraph 16 are attached hereto as Exhibit B.

17. Thereafter, Parsons reported and represented to EON and its Board of Directors that the Letter Agreement, as revised by the October 19, 2004, emails, was in Clear Channel "legal."

18. In reliance thereon, EON commenced and continued the development of the deliverables identified in Exhibit A, including the development of the ad insertion advertising system, and expended over $200,000 in such development.

19. Parsons represented that, if the deliverables were provided by EON by April, 2005, Clear Channel would execute the Letter Agreement.

20. Parsons participated in an April 27, 2005, meeting of the Board of Directors of EON. Minute entry no. 1-4-27-2005-5 of the minutes from that meeting recites that

> 1-4-27-2005-5 (Information Items.) In response to an inquiry from Director Campbell, Director Newman informed the Board that a written contract with Clear Channel is currently contingent on the Corporation delivering two items to Clear Channel about which Mr. Woods stated the

Corporation's expectancy to deliver such items this week and Mr. Parsons stated that Clear Channel is committed to executing the written contract upon the Corporation's delivery of such items.

21. EON delivered the items referred to in the April 27, 2005 minutes within this time frame.

22. Clear Channel representatives, including an officer, Evan Harrison, participated with EON representatives in visits to market the ad insertion system.

23. Clear Channel did not, however, execute the Letter Agreement, as promised, and, on November 1, 2005, it issued a press release stating that it had selected Akamai Technologies, Inc. as its exclusive provider of Internet streaming services, contrary to its agreement with EON.

24. Clear Channel is liable to EON for its breach of contract and/or negligent misrepresentations because EON was damaged by relying on Clear Channel's representations, and did not receive the benefit of its bargain, and Clear Channel is promissorily estopped from denying the existence of its contract with EON.

WHEREFORE, EON prays that process be issued, that Clear Channel be brought before the Court, that a jury be empanelled to try this case and that the Court enter its judgment upon the jury's verdict and award such other further and general relief as may be just, necessary and appropriate.

Respectfully submitted,

By: _____
Martin B. Bailey, BPR No. 15370
Herbert S. Sanger, Jr., BPR No. 13125
Mark N. Foster, BPR No. 023626
**WAGNER, MYERS & SANGER, P.C.**
P.O. Box 1308
Knoxville, TN 37901
(865) 525-4600



505 Market Street
Knoxville TN 37902
www.eonstreams.com
info@eonstreams.com
Phone 865.524.6209
Fax 865.544.2062

# Letter of Agreement

October 12th, 2004

Mr. Brian Parsons
**Clear Channel Communications**
50 E. Rivercenter Blvd., #1200
Covington, KY 41011

RE: **Network Ad placement solution for Clear Channel stations**

Dear Brian,

Thank you for this opportunity to offer the following services to our partner, Clear Channel Communications. We are excited to offer Clear Channel a centrally-managed, network-wide streaming ad placement system.

The ad system we will develop over the next few months proposes to deliver a highly custom user experience delivering targeted, profiled advertising from one centrally managed location. It is our goal to focus on assisting partners such as Clear Channel in delivering the most flexible, high quality, and state-of-the-art service possible to their customers.

Eonstreams agrees to deliver the following streaming media services to Clear Channel Communications. In return, Eonstreams will negotiate and execute a Service Agreement with Clear Channel by January 1st, 2005 for a minimum three (3) year period.

Streaming media services include the following features:

Streaming Media Players
Eonstreams will develop and host custom media players for Clear Channel stations. The player interface will include station logo(s) and graphic(s) as applicable. The streaming player incorporates multiple advertising opportunities. Players also deliver live Artist and Title information.

Reporting system
Eonstreams will provide web-based access to real-time streaming audience statistics. Instant reports are generated for each media player regarding the number of users currently accessing a stream or piece of media content. Statistics are also provided displaying how long each user has been listening and the status of their connection. Geographic ("geo-targeted") data is supplied for each user without the need for user questioning or intervention.

Data Collection
Eonstreams' streaming media players may include an account login feature. Account login identifies each user individually and provides access to the stream. Reports are generated based on detailed user demographic and psychographic information collected during the account creation process. Any data collected is to be considered the proprietary confidential property of Clear Channel Communications

**EXHIBIT A to Complaint**

Confidential Information of Eonstreams, Inc.
Initials: Client _____ Eonstreams _____ 1

Digitizing   Encoding   Hosting   Streaming   Content Distribution   Media Management   Development



505 Market Street
Knoxville TN 37902
www.eonstreams.com
info@eonstreams.com
Phone 865.524.6209
Fax 865.544.2062

### Network ad insertion/placement

Eonstreams will develop and deliver a network ad traffic and reporting system by January 1st, 2005. This network ad traffic and reporting system will be managed from one central location and interface with Clear Channel's Prophet Nexgen automation system terrestrial ad replacement. The ad system will deliver personalized advertising based on the user's demographic and/or psychographic profile. Clear Channel will retain all editorial control of their station network and branding.

### Assurance of service

Eonstreams agrees to maintain all agreed service features, including competitive pricing, quality of service, and product features, throughout the term of the Agreement.

In return, Clear Channel Communications agrees to the following:

### Streaming Services Agreement

Clear Channel agrees to execute a binding Service Agreement, to include terms for streaming services, hosting, and advertising placement/commissions, by January 1st, 2005. This Service Agreement will be executed for a minimum three (3) year period.

### Clear Channel Radio streaming network

Under the Service Agreement, Clear Channel agrees that Eonstreams will become the preferred streaming service partner for Clear Channel Radio stations. Any new station setups during the term of the agreement will be referred to Eonstreams.

### Network Ad Sales

Clear Channel agrees that Eonstreams will receive a 15% commission on all network advertising sales initiated by Eonstreams during the term of the Agreement.

We are excited about establishing a long-term relationship with Clear Channel Communications and a partnership that will help both companies grow. We look forward to delivering a high quality product that satisfies your streaming media and network ad placement needs.

By signing below you agree to the terms mentioned above:

| *Eonstreams, Inc.* | *Clear Channel Communications* |
|---|---|
| By:_____ | By:_____ |
| Print:_____ | Print:_____ |
| Title:_____ | Title:_____ |
| Date:_____ | Date:_____ |

Confidential Information of Eonstreams, Inc.
Initials: Client _____ Eonstreams _____ 2