IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LATIVAFTER LIQUIDATING TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CV-578 |
| | ) | (PHILLIPS/GUYTON) |
| CLEAR CHANNEL COMMUNICATIONS, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

This matter is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by the Order [Doc. 130] of the Honorable Thomas W. Phillips, United States District Judge, for disposition of defendant Clear Channel Communications, Inc.'s ("Clear Channel's") Motion to Strike Plaintiff's Opposition to Clear Channel's Motion for Summary Judgment. [Doc. 121] On October 18, 2007, the Court directed the parties to file supplemental responses. [Doc. 145] The parties have since filed their supplements [Docs. 153, 159], and the matter is now ripe for adjudication.

Clear Channel moves the Court to strike plaintiff Latifvafter Liquidating Trust's[1] ("Eon's") entire opposition to Clear Channel's motion for summary judgment. As grounds, Clear Channel states that Eon violated the District Court's Scheduling Order [Doc. 14] by failing to

---

[1]The Court notes that on July 23, 2007, an Order was entered substituting Lativafter Liquidating Trust for Eon Streams, Inc. as the plaintiff and counter-defendant in this action. However, the parties still refer to the plaintiff as Eon in their briefs. Accordingly, for ease of reference the Court will refer to the plaintiff as Eon throughout this opinion.

properly respond to Clear Channel's Statement of Undisputed Facts. [Doc. 97] Eon opposes the motion, arguing that it provided a proper response [Doc. 108] to Clear Channel's statement of facts, and that Eon's response was proper in light of Clear Channel's failure to cite to portions of the record that supported its claims.

> The Scheduling Order entered in this matter provides, in pertinent part, that:
>
> Special Instructions for Motions for Summary Judgment: Any motion for summary judgment shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each such fact shall be set forth in a separate, numbered paragraph, and shall be supported by no more than two citations to the record.
>
> The party opposing the motion for summary judgment shall file, contemporaneously with his/her brief in opposition, opposing affidavits, etc., a separate pleading that responds to each fact set forth by the movant that either (1) agrees that the fact is undisputed, (2) agrees that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (3) demonstrates that the fact is disputed, in which event there must be a specific citation to the record. Further, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and disputed; each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record.
>
> The parties are advised that these pleadings are not to be used for argument, which is the proper role of their briefs. If either party fails to file the pleading required of him/her as set forth herein, the Court may strike that party's motion or opposition, as the case may be.

[Doc. 14 at ¶ 6(b)(I)]

Clear Channel initially objected to Eon's responses to ¶¶ 3, 4, 8, 9, 11, 12, 14, 15, 18, 19, 20, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 33, 35, 36, 37, 39, 40, 42, 43, 44, 45, 48, 49, 59, 60, 61, 62, 69, 74, 75, 76, and 77. In its supplement, Clear Channel again asserted that each of these entries is fully supported by the citations provided with the entries. [Doc. 153] In its supplement, Eon

indicated that it now classified ¶¶ 3, 4, 9, 19, 20, 24, 26, 29, 30, 31, 32, 33, 36, 37, 39, 42, 43, 44, 45, 75, and 76 as "undisputed for the purposes of ruling on the motion for summary judgment only." [Doc. 159] Additionally, the Court notes that while ¶¶ 8, 27, and 74 were included in the disputed entries that the Court directed the parties to address in their supplements, Eon's supplement does not address these items. Accordingly, the Court finds that Eon has waived argument on ¶¶ 8, 27, and 74 and further finds that those items are classified as "undisputed for the purposes of ruling on the motion for summary judgment only." Thus, the only remaining entries in dispute are ¶¶ 11, 12, 14, 15, 18, 22, 23, 25, 48, 49, 59, 60, 61, 62, 69, and 77. The Court will address each of these entries in turn. The Court will begin the analysis of each entry with a verbatim reproduction of the entry in question. Additionally, the Court points out that, given that this matter is at the summary judgment stage, all facts must be viewed in the light most favorable to Eon.

## I. Entry 11

"On November 11, 2004, Newman felt comfortable representing that Eon had an ad insertion product even though, in fact, it was just starting to develop one. Newman Dep. at 171, 173."

> The cited deposition provides, in pertinent part:
>
> Q: Now, your testimony was that you felt comfortable sending out a letter like that to Lindahl, Cox, and the others in November, by November 11, 2004, because I think your testimony was you had already had the agreement with Clear Channel?
>
> A: Yeah, it was - - Brian Parsons had agreed to let us go forward, so we're starting to develop it.

[Doc. 192-2 at 4-5] Eon contends that the "letter like that" referred to above contains no representations that Eon had an ad insertion product. The document that Eon identifies as the "letter like that," an email from Steve Newman to Gregg Lindahl dated November 11, 2004, contains, in

3

pertinent part, the following language:

> I want to be your streaming provider but I think we can offer a boat load more than any one in this industry and keep everything under your expense budget and provide revenues for you on the other end.
>
> I'll summarize:
> . . .
>
> 3. Ad insertion product that is capable of delivering online schedules by station, by market, by region, by format or as a network from a central location without added equipment at the station level. No extra charge.

[Id. at 6] Eon also argues that immediately following a portion of the deposition testimony relied upon by Clear Channel, the deponent testified that, presumably referring to the ad insertion technology, "[Mr. Lindahl] said that once we had something up and working he would be glad to look at it." [Id. at 3]

The Court finds that entry 11 is not a statement of fact, but instead draws an impermissible inference in favor of defendant. The email does not indicate whether Eon had ad insertion technology available or not, only that Eon wished to offer that service. Nor did the deponent testify that he was comfortable stating that Eon had such technology available, but rather he responded yes to the question of whether he was comfortable "sending out a letter like that." In short, the citations support a factual statement that Newman was pitching the ad insertion technology, but there is no factual support for the statement that Newman was actually representing that the technology was in place. Such an inference simply cannot be drawn at this stage of the proceedings. Accordingly, the Court finds that Entry 11 is not an accurate statement of undisputed fact and further finds that Entry 11 is effectively disputed.

4

## II. Entry 12

"Eon would benefit if it developed FastAim whether it developed it for Clear Channel or some other media company because Eon would be able to market that technology across the industry. Newman Dep. at 98; Skelton Dep. at Ex. 23"

The provided citations indicate that Mr. Newman's strategy was that Eon would benefit whether the ad insertion technology was developed for Clear Channel or for some other company, and that the ad insertion technology was to be catered to the broadcast industry. However, while Mr. Newman's strategy was that Eon would benefit, there is no evidence that Eon would definitely benefit, only that Mr. Newman hoped it would benefit. Accordingly, the Court finds that Entry 12 draws an impermissible inference in favor of Clear Channel and further finds that Entry 12 is effectively disputed.

## III. Entry 14

"Eon expected FastAim to be attractive to other clients and did not expect Clear Channel to pay for its development. Newman Dep. at 98, 117."

The provided citations indicate that Mr. Newman did expect FastAim to be attractive to other clients and that Clear Channel was not going to directly pay for the development. Thus, this portion of the record does support Clear Channel's assertion. However, Eon cites to a portion of Mr. Newman's testimony that indicates that Clear Channel would extend the services contract for three years and allow Eon to collect a 15% commission on ad sales in exchange for Eon's development of the program. Thus, there is a dispute over whether extending the duration of sales contract and allowing a 15% commission could be defined as "paying." The Court finds that Entry 14 is effectively disputed.

5

**IV.     Entry 15**

"By October 2005, Eon believed that its development of FastAim had rendered a viable product that Eon could license to its customers including Citadel and Media Span. Eon's 30(b)(6) Dep. at 122, Ex. 17."

The provided citations indicate that "when Clear Channel left" Eon started to include the cost of the product in licensing agreements and in its revenue projections. Eon contends that there is no support for the date of October 2005, arguing that there is no evidence as to what the statement "when Clear Channel left" means. Clear Channel relies on Exhibit 17 to Eon's 30(b)(6) Deposition, which is a projection dated October 26, 2005. Thus, there is evidence of record to indicate that Eon had altered its revenue projections by October 2005. Accordingly, the Court finds that Entry 15 does contain factual support and is effectively undisputed for the purposes of summary judgment.

**V.      Entry 18**

"Clear Channel uses the ad insertion solution developed by Prophet. Parsons Dep. at 66."

The provided citation indicates that Clear Channel is using a technology developed by Prophet, but that the technology is not really ad insertion, though they do refer to it as ad insertion. The Court finds that the citation effectively disputes itself, as there is a dispute over whether the technology being used is an "ad insertion solution," since the citation indicates that the technology is not really ad insertion. The Court finds that Entry 18 is effectively disputed.

**VI.     Entry 22**

"The LOI proposed a contract to make a contract. Newman Dep. at 173-174; Skelton Dep. at 119."

The provided citations do support the contention that Clear Channel had entered into

a contract under which they agreed to enter into a future contract. However, Eon disputes whether the document in question, the "contract to enter into a contract," is the "Letter of Agreement" at issue in this case. Eon contends that Mr. Newman was not asked whether the "contract to enter into a contract" that he was referring to was the "Letter of Agreement." Eon further contends that Mr. Skelton was improperly asked whether Mr. Newman was discussing the "Letter of Agreement" when testifying about the "contract to enter into a contract." To the extent that the objection to Mr. Newman's testimony remains unresolved,[2] the Court finds that Entry 22 is effectively disputed.

## VII. Entry 23

"The LOI did not specify that Eon would be Clear Channel's exclusive agent for the sale of any advertising. Complaint at Ex. A."

The provided citation refers to an unexecuted Letter of Agreement attached to the complaint, which Clear Channel defines as the "LOI." Eon contends that the Letter of Agreement attached to the complaint is not the controlling document, but rather that this law suit revolves around the final, revised Letter of Agreement transmitted by Mr. Parsons to Eon on October 22, 2004. Eon uses the defined term of "LOA" to refer to the October 22, 2004, document. Eon further contends that it was to be the exclusive advertising sales agent, citing to Mr. Newman's deposition. Given that there is a dispute over whether the LOI or the LOA is the controlling document in this matter, as well as a dispute over whether Eon was to be the exclusive advertising sales agent for Clear Channel, the Court finds that Entry 23 is effectively disputed.

---

[2]The Court notes that the objection is not before it at this time, nor has the Court heard arguments on the objection, thus the Court cannot resolve the objection at this time.

## VIII. Entry 25

"Emma Woods of Eon sent a draft of the LOI to Brian Parsons on October 21, 2004, with an email that stated in part: We would greatly appreciate an 'email of intent' as discussed this morning to take to our Board Meeting tomorrow. This would outline that you are happy with the terms of the Letter of Intent and will be taking it up the ladder by Monday to have this approved. Skelton Dep. at Ex. 27; Parsons Aff. at Ex. D."

The provided citation refers to an email message from Emma Woods to Brian Parsons dated October 21, 2004. The message states, in pertinent part, that "I have made this change and re-attached what is hopefully the final version. Please let me know if it is good to go." Additionally, a review of the attached document reveals that the document makes use of Microsoft Office's Track Changes feature, showing that several modifications had been made to the document.

Eon contends that there is no evidence to support Clear Channel's contention that the document is a "draft." Additionally, Eon contends that the attached document is "obviously" a different document from the document Clear Channel defines as the LOI. A review of the LOI and the attached document reveals that the two documents are very similar, though there are differences between the two. The Court notes, however, that the LOI (and the attached document) are dated October 12, 2004, while the email is dated October 21, 2004.

The Court notes that, while all reasonable inferences must be drawn in favor of the non-moving party during summary judgment, that does not mean that strained and unreasonable inferences must also be drawn in the non-movant's favor. Audi AG v. D'Amato, 469 F.3d 534, 545 (6th Cir. 2006) (citing Willis v. Roche Biomedical Laboratories, Inc., 21 F.3d 1368, 1380 (5th Cir. 1994)). Given the use of the Track Changes feature on the attached document, as well as the email's

language indicating that changes had been made and asking whether this would be the final version of the document, the Court finds that it would be an unreasonable and strained inference to assume that the attached document is not a draft version of some document. However, given the dispute over the LOI and the LOA, as well as the fact that the email is dated some nine days after the date showing on the LOI, the Court cannot determine whether the attached document is a draft version of the LOI, or whether the LOI is some earlier version of the attached document, or what relation the LOI and the attached document share with the LOA. Accordingly, the Court finds that Entry 25 is effectively disputed.

## IX. Entry 35

"In January 2005, Mike Campbell of Eon's board of directors questioned the status of a signed contract with Clear Channel at Eon's board meeting. Skelton Dep. at 127-28."

The provided citation supports Clear Channel's contention that in January, 2005, Mr. Campbell did question Mr. Parsons about the status of a contract. However, the cited testimony does not indicate that the contract was signed, nor does the cited section indicate that the questioning occurred during Eon's board January board meeting. The questions and answers immediately preceding the relevant testimony relate to the board meeting, but it is possible that the questioning of Mr. Parson's about the contract occurred at some time other than the board meeting, nor would such an assumption constitute a strained and unreasonable inference. Accordingly, the Court finds that Entry 35 is not fully supported by the provided citations and is effectively disputed.

## X. Entry 40

"Eon's Board of Directors knew at the April 27, 2005, meeting that the proposed contract with Clear Channel had not been signed. Skelton Dep. at 129-30; Sanger Dep. at Ex. 27."

9

The provided citations include the minutes of an April 27, 2005, Eon Board of Directors meeting. Those minutes indicate that

> In response to an inquiry from Director Campbell, Director Newman informed the Board that a written contract with Clear Channel is currently contingent on the Corporation delivering two items to Clear Channel about which Mr. Woods stated the Corporation's expectancy to deliver such items this week and Mr. Parson's stated that Clear Channel is committed to executing the written contract upon the Corporation's delivery of such items.

[Doc. 103, Deposition of Herbert Sanger at Exhibit 27] Thus, it is clear that the Eon board was informed at the April 27th meeting that the contract with Clear Channel had not yet been executed. Given that the board was informed that the contract would be executed upon delivery of the pending items, the Court does not find Clear Channel's use of the phrase "proposed contract" inappropriate. Clearly, if the contract were going to be executed in a week's time, it, by necessity, must have been proposed in some fashion, otherwise no one would have known of the contract in the first place. Accordingly, the Court finds that Entry 40 is effectively undisputed for the purposes of summary judgment.

## XI.  **Entry 48**

"In its Initial Disclosures statement of damages, Eon claims damages only for breach of contract and claims no damages for negligent misrepresentation or promissory estoppel. Eon's 30(b)(6) Dep. at Ex. 26; Plaintiff's Initial Disclosures."

The provided citations indicate that "[t]he categories of damages claims by Eon are damages for breach of contract, including actual and consequential and incidental damages; (2) prejudgment interest and (3) punitive damages." [Doc. 103, Rule 30(b)(6) Deposition at Exhibit 26] Thus, the Entry is factually accurate, as Eon's initial disclosures do not address negligent

misrepresentation or promissory estoppel damages, only damages for breach of contract. Whether Eon suffered damages associated with its claims of negligent misrepresentation or promissory estoppel is not addressed by this Entry, only the fact that Eon's initial disclosure does not directly address any such damages. Thus, the Court finds that the statement is supported and is effectively undisputed for the purposes of summary judgment. Whether Entry 48 represents a material fact for the purposes of summary judgment is a matter that must be left to the District Court.

## XII.     Entry 49

"Newman was designated to represent Eon in its Rule 30(b)(6) deposition on topics which included, 'Plaintiff's projections supporting Plaintiff's claim for 'lost profits' for 2006, 2007, and 2008.' and 'Plaintiff's projections and/or calculations for Plaintiff's claim for 'lost valuation' of the company relating to the Vital Streams acquisition in 2006.' Ct. Doc. 87 30(b)(6) Notice ¶¶ 1, 4."

Entry 49 is factually supported, as Mr. Newman was designated as Eon's Rule 30(b)(6) witness and the notice of deposition did address the indicated topics. Whether this is a material fact for the purposes of summary judgment must be left for the District Court's determination.

## XIII.    Entry 59

"The formula for projected 'lost valuation' set forth in Eon's Initial Disclosures is incorrect. Eon's 30(b)(6) Dep. at 202."

A reviewe of the provided citation reveals that, according to the witness, "[y]ou got to look at somebody's actual revenues and then take a look at what their value is" to determine lost valuation, while Eon's lost valuation was apparently calculated based upon a projection. [Doc. 103, Rule 30(b)(6) Deposition at 202] However, the witness does not testify whether there is only one

way to determine lost valuation, nor does the witness specifically testify that the method used by Eon is incorrect. The provided testimony, standing alone, is simply insufficient to prove as a fact that Eon's calculation was incorrect, only that the witness <u>might</u> believe it was incorrect, though he never actually testified to that. Thus, the Court finds that Entry 59 is not fully supported thus is effectively disputed.

## XIV. Entry 60

"Eon's value at the time of the Sale to VitalStream in May 2006 was, in fact, calculated as a multiple of past actual revenue, not projected revenue. Eon's 30(b)(6) Dep. at 202."

The Court notes that Eon provides a disputing citation for this entry, thus Entry 60 is effectively disputed. Eon does not indicate that Entry 60 is factually flawed, thus the Court assumes that Eon no longer argues that Entry 60 is an impermissible non-factual statement, instead arguing only that it is now merely a disputed statement.

## XV. Entry 61

"Eon's formula for its projected 'lost valuation' set forth in Eon's Initial Disclosures is incorrect because the multiplier 3.9 was not used to determine Eon's value at the time of sale to VitalStream in 2006. Eon's 30(b)(6) Dep. at 201, 205.

The provided citations indicate that the witness did not know where the "3.9" came from. [Doc. 103, Rule 30(b)(6) Deposition at 205] The fact that the witness did not know where the "3.9" came from does not mean that the calculation was incorrect. If the inclusion of 3.9 in the calculation renders it incorrect, further documentation is needed to show that, not merely testimony that the witness didn't know where the number came from. The Court finds that Entry 61 is effectively disputed.

12

## XVI. Entry 62

"Eon's formula for its projected 'lost valuation' set forth in Eon's Initial Disclosures is incorrect because Eon's projected revenue for 2006 without Clear Channel's alleged breach was not $6.7M. Eon's 30(b)(6) Dep. at 228."

The provided citation indicates that the witness thought that the $6.7M number was incorrect. [Doc. 103, Rule 30(b)(6) Deposition at 228] The fact that the witness "thought" the number was incorrect does not prove, as a fact, that the number was incorrect, only that the witness thought it was incorrect. The Court finds that Entry 62 is effectively disputed.

## XVII. Entry 69

"Eon based its projections for advertising revenue on the assumption that Eon could sell all of the inventory Clear Channel made available. Eon's 30(b)(6) Dep. at 63-65."

The provided citation indicates, in pertinent part, that:

> Q: Okay. And out of that total inventory you're trying to make some assumptions or projections of what you could sell for network sales –
>
> A: Exactly.
>
> Q: -- out of the total inventory?
>
> A: Exactly.

[Doc. 103, Rule 30(b)(6) Deposition at 64] After reviewing the entire cited entry, the Court finds that the entry is not factually supported. The testimony can be interpreted to indicate that Eon was attempting to make projections as to what percentage of the total inventory it could sell. Such an interpretation would mean that the cited testimony does not indicate that the projections reached

13

were that Eon would be able to sell 100% of the inventory, only that it was attempting to make some projection, though the cited testimony does not reveal what the projection was. The Court finds that Entry 69 is effectively disputed.

### XVIII. Entry 77

"Eon's goal or objective through its sale was to get 10 times its actual last year of revenue and Eon's actual revenue for 2005 was approximately $1.7M. Eon's 30(b)(6) Dep. at 156, 159."

The provided citation indicates, in pertinent part, "[w]e were trying to get 10X." [Doc. 103, Rule 30(b)(6) Deposition at 156] Thus, according to the witness, Eon was trying to get ten times its actual revenues. The citations also provide that the actual revenue for 2005 was approximately $1.7M. [Id. at 159] Given that Eon was "trying to get 10X," the Court finds this entry to be factually supported. However, Eon does offer the Declaration of Grady S. Vanderhoofven [Doc. 108-2] as a citation in dispute, thus the entry is effectively disputed.

### XIX. Sanctions

In its October 18, 2007, Order [Doc. 145], the Court ruled that:

> After both supplements are filed, the Court shall review the supplements. If, at that time, the Court determines that either Clear Channel has improperly failed to withdraw a statement that is not factually supported by the offered citations, or that Eon has improperly argued that a statement is not factually supported when it does have evidentiary support, the Court shall consider such actions a violation of Rule 11 of the Federal Rules of Civil Procedure and shall invoke the proper sanctions and penalties.

On the issue of whether sanctions under Rule 11 are, or are not, appropriate, the Court finds that the level of advocacy applied to the issues at hand, by both parties, borders on becoming overzealous. However, the Court will find that sanctions are not appropriate.

14

## XX. Conclusion

For the reasons set forth more fully above, the Court finds that while some of the disputed entries were factually supported, many were not.  Thus, the Court finds that it would be inappropriate to strike Eon's opposition to the summary judgment motion.  Accordingly, Clear Channel's motion [Doc. 121] is hereby **DENIED**.

**IT IS SO ORDERED.**

ENTER:

_s/ H. Bruce Guyton_
United States Magistrate Judge