# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| LATIVAFTER LIQUIDATING TRUST, ) | |
|     Plaintiff, ) | |
| v. ) | No. 3:05-CV-578 |
| ) | (Phillips/Guyton) |
| CLEAR CHANNEL COMMUNICATIONS, INC., ) | |
|     Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Eon Streams, Inc.,[1] has brought this action against defendant Clear Channel Communications, Inc., for breach of contract, promissory estoppel and negligent misrepresentation. Clear Channel has brought a counterclaim against Eon alleging breach of contract and intentional interference with existing or prospective business relationships. The parties have filed cross-motions for summary judgment. Because material issues of fact exist as to all claims asserted in this case, the parties' motions for summary judgment will be denied.

Factual Background

Plaintiff Eon is a Tennessee corporation whose business is to provide streaming services. Streaming is a process by which sound or pictures are made available

---

[1] Though the style of the case has been changed to reflect that the named plaintiff is Lativafter Liquidating Trust, the parties continue to refer to the plaintiff as Eon Streams, Inc.

on the Internet by transmitting them over fiber optic cables, similar to the transmission of electricity over wire lines. Defendant Clear Channel is a Texas corporation which operates a network of about 1200 radio broadcast stations.

In January 2004, Eon entered into a Services Agreement with Clear Channel, whereby Eon became a streaming services provider for Clear Channel. The Services Agreement was a one-year automatically renewable contract whereby Eon provided streaming and related services to Clear Channel in exchange for a price determined solely by the amount of data transferred over Eon's bandwidth. Eon's President Stephen Newman and Brian Parsons, Clear Channel's Vice President of Technology, discussed a relationship whereby Eon would sell online advertising for Clear Channel, based in part on Newman's contacts in the media industry. Eon learned that Clear Channel had no satisfactory way to insert advertisements into the streamed audio from its radio stations, so Newman canvassed the industry for a satisfactory ad insertion solution and found none. Newman and Parsons then discussed using Eon's technical expertise to develop ad insertion technology. Eon's proposed development would include software to deliver and insert ads.

Eon sent Clear Channel a draft Letter of Agreement on October 12, 2004 to renegotiate its existing Services Agreement. Parsons sent an October 19, 2004 email to Newman, Eon's Emma Woods and Kim Johnson, a Clear Channel Vice President, in which he verified the deal points. On October 19, 2004, by email, Johnson confirmed the commission terms as payment of a 15% commission on advertising secured by Eon to be

exhibited through FastAim (ad insertion software). Parsons then sent a final version of the Letter of Agreement to Eon on October 22, 2004. The Letter of Agreement provided that Eon would develop FastAim, that Eon would be Clear Channel's preferred streaming partner, that Eon would receive a 15% commission on sales it made, and that the parties would enter into a new three-year Services Agreement for streaming. Parsons assured Newman that everyone at Clear Channel had approved this Letter of Agreement, that it was "in legal" and Jeff Littlejohn, Parsons' superior, also confirmed to Newman that Clear Channel and Eon "absolutely" had an agreement.

Parsons joined the Eon board of directors to assist in the development of FastAim, a position in which he could receive stock options from Eon. At the April 27, 2005 meeting of the board of directors of Eon, Parsons informed the board that Clear Channel was committed to executing the written contract. Eon hired developers and customer support personnel and developed the FastAim ad insertion technology and began to implement it on Clear Channel stations.

In November 2005, Clear Channel terminated its relationship with Eon and issued a directive forbidding Eon from selling advertising on Clear Channel's radio stations.

Eon has brought this action against Clear Channel asserting claims for breach of contract, promissory estoppel and negligent misrepresentation. Eon alleges it was damaged by Clear Channel's actions, which caused a loss of profits, and further resulted in a depressed price when Eon sold its assets. Clear Channel contends it is entitled to

3

summary judgment on Eon's claims because Clear Channel fully performed the executed Services Agreement with Eon, made no other contract with Eon, and made no misrepresentation of any existing facts or promise upon which Eon reasonably relied.

Clear Channel asserts counter-claims for breach of contract and intentional interference with existing or prospective business relationships. Clear Channel alleges that Eon failed to make every effort to keep its service up and running causing outages and failures in Eon's provision of bandwidth. The Services Agreement provides that

> Eon Streams, Inc., make every effort to keep its service up and running. However, Eon Streams, Inc., cannot and will not guarantee 100% uptime of its service.

Clear Channel alleges that Eon failed to provide bandwidth streaming services to Clear Channel as required by the Services Agreement. Eon failed to keep its service up and running, creating significant outages of its bandwidth streaming services. Eon failed to provide related reporting services and technology to Clear Channel as required by the Services Agreement. Thus, Clear Channel alleges that Eon breached its obligations to Clear Channel under the Services Agreement.

Clear Channel has identified at least 166 days during 2005 in which Clear Channel experienced outages and problems with Eon's streaming services. Clear Channel calculated Eon's downtime in 2005 to be in excess of 63 hours. Clear Channel also experienced reporting problems with Eon. "Reporting," a streaming related service, refers to the data and numbers reflecting how many people are viewing a particular on-line stream. The reporting services are important for salespeople to be able to accurately

represent to advertisers or prospective advertisers, the number of people who are viewing the stream where their ad would be placed.  Under the Services Agreement, Eon was required to provide reporting so that at any given time Clear Channel would know how many people were streaming.  While streaming with Eon, Clear Channel's stations experienced problems arising from Eon's service failures including (1) buffering and dropping streams, (2) interrupted streams, (3) streaming outages, (4) inability for new listeners to connect to a stream, (5) routing and encoder issues and problems, (6) players not loading, (7) reporting problems, such as inaccurate reporting due to Eon's reporting systems being disabled and discrepancies between Eon's two different reporting systems, (8) delayed and incomplete reports needed by the local markets, and (9) local markets' advertisements not running.

In addition, Eon represented itself as the exclusive selling agent for Clear Channel radio interactive to national advertisers with whom Clear Channel had existing or prospective business relationships.  Eon was instructed not to communicate with any of Clear Channel's local market radio stations.  Clear Channel avers that Eon violated those instructions creating problems, confusion and misrepresentations within Clear Channel's local markets.  These improper communications and interferences by Eon further impacted and damaged Clear Channel's business relationships with local advertisers which negatively impacted sales.

Clear Channel asserts that Eon's breach of the Services Agreement and its intentional interference with Clear Channel's existing and prospective business

relationships caused Clear Channel to lose streaming revenue and related profits during the term of the Services Agreement. Additionally, Clear Channel claims lost goodwill and reputation caused by Eon's breach and interference that extended in 2006 while Clear Channel's markets, advertisers and listeners restored their confidence in Clear Channel's streaming capabilities and representations. Eon contends it is entitled to summary judgment on Clear Channel's claims because (1) the Services Agreement does not provide for any percentage of "uptime" that Eon must provide, and (2) Clear Channel can show no evidence of intentional interference by Eon.

Analysis

The parties have filed cross-motions for summary judgment. Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve

the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

I

Clear Channel has moved for summary judgment on the grounds that it did not breach any contract and because it fully performed the only enforceable contract between the parties, the Services Agreement. To prevail on a claim for breach of contract, Eon must show (1) the existence of an enforceable contract, (2) a breach of the contract due to nonperformance, and (3) damages caused by the breach. *See Life Care Centers of America, Inc. v. Charles Town Assocs. Ltd. Partnership, LPIMC, Inc.,* 79 F.3d 496, 514 (6th Cir. 1996). Clear Channel asserts three arguments to show that there was no contract: (1) the Services Agreement requires an amendment to be in writing, (2) there was no amendment because there was no objective manifestation of mutual assent, and (3) the statute of frauds requires any amendment to be in writing.

Clear Channel's lead argument is that Eon's contentions fail because the express terms of the Services Agreement forbid it from being supplanted by an oral agreement. Eon contends that the parties had an oral agreement to amend the Services Agreement to a three-year term and that Clear Channel breached the oral agreement.

7

In Tennessee, "after a written contract is made, it may be modified by the express words of the parties in writing, as well as by parol." *Galbreath v. Harris,* 811S.W.2d 88, 91 (Tenn.App. 1991); *see also Co-operative Stores Co. v. United States Fid. & Guar. Co.,* 195 S.W. 177, 180 (Tenn. 1917). This is true even if the contract expressly specifies that the parties may only modify the agreement in writing. *Id.* The parol evidence rule is inapplicable to evidence of oral modification because the rule will "permit testimony to . . . show a subsequent modification to a written agreement. Once admitted, this evidence does not in any way deny what the original agreement expressed; however, it merely demonstrates that parties may have exercised their right to modify the written agreement." *Shah v. Racetrac Petroleum Co.,* 338 F.3d 557, 572 (6th Cir. 2003); *see also GRW Enters., Inc. v. Davis* 797 S.W.2d 606, 610-11 (Tenn.App. 1990). Thus, under Tennessee law, the parties could orally modify the Services Agreement.

Clear Channel next suggests that any oral modification would fail under Tennessee's Statute of Frauds. *See* Tenn. Code Ann. § 29-2-101. The Statute of Frauds requires that parties memorialize certain types of contracts in writing. *Huffine v. McCampbell,* 257 S.W. 80, 89 (Tenn. 1923). The Statute of Frauds does not apply, however, once part performance occurs. *Blasingame v. Am. Materials, Inc.,* 654 S.W.2d 659, 663 (Tenn. 1983); *Foust v. Carney*, 329 S.W.2d 826, 829 (1959); *Buice v. Scruggs Equip. Co.,* 250 S.W.2d 44, 47 (Tenn. 1952); *Schnider v. Carlisle Corp.,* 65 S.W.3d 619, 621 (Tenn.App. 2001). The Tennessee Supreme Court explained the part performance exception this way:

> The doctrine of partial performance to take the verbal contract out of the operation of the Statute of Frauds is purely an equitable doctrine and is a judicial interpretation of the acts of the parties to prevent fraud. The acts of the appellant relied on as partial performance had been done by him in pursuance to the averred contract and agreement and are clearly referable thereto. "The plaintiff must be able to show such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, so far to alter his position as to incur an unjust and unconscionable injury and loss, in case the defendant is permitted after all to rely upon the statutory defense." 49 *Am.Jur.,* Sec. 427, page 733.

*Buice,* 250 S.W.2d at 48. Both Eon and Clear Channel performed under the Letter of Agreement. First, Eon made sales calls on behalf of Clear Channel through trips to New York by Newman and Don Williams, an advertising executive that Eon hired to assist with the Clear Channel account. Newman had sales meetings for Clear Channel in Chicago and Las Vegas. Johnson reported on these sales activities to Harrison. Harrison and Parsons went on sales trips with Eon. Clear Channel acknowledged the agreement to pay Eon a 15% commission. Harrison admitted that this arrangement was separate from the streaming agreement. Harrison established an objective for Parsons to move all streaming stations over to Eon by May 1, 2005. To accommodate the additional influx of streaming, Eon purchased additional "pipe" to handle the streaming load. As for the development of the ad insertion technology, Parsons reported to Harrison that Eon had installed additional data centers and hired programmers. Eon also conducted training for Clear Channel on FastAim.

Since part performance occurred, the Statute of Frauds does not prevent the parties from modifying the Services Agreement after its execution. Because Clear Channel terminated Eon's services within the 3-year term of the Letter of Agreement, Eon has raised a genuine issue of material fact as to whether an oral modification of the Services Agreement occurred, and, if so, whether Clear Channel breached the revised agreement. A reasonable jury could find that Eon partially performed under the Letter of Agreement and altered its position in reliance on Parsons' promises and went out of business as a result.

II

Clear Channel next contends that Eon's claims for negligent misrepresentation and promissory estoppel fail because Clear Channel made no material misrepresentation or promise upon which Eon reasonably relied to its detriment. To succeed on a claim for negligent misrepresentation, Eon must show that Clear Channel provided a false, material, past or present fact to Eon without reasonable care in obtaining or communicating that fact, and Eon justifiably relied upon the faulty information. *McElroy v. Boise Cascade Corp.,* 632 S.W.2d 127, 130 (Tenn.App. 1982).

To succeed on a claim for promissory estoppel, Eon must show that (1) Clear Channel made a promise with a reasonable expectation of inducing some action or forbearance from Eon, (2) Eon reasonably and justifiably relied on Clear Channel's promise in taking action or forbearance, and (3) as a result, Eon suffered detriment and unavoidable injustice. *Barnes & Robinson Co., Inc. v. OneSource Facility Services, Inc.,* 195 S.W.3d 637, 645-46 (Tenn.App. 2006).

In this case, Parsons told the Eon board of directors that "Clear Channel is committed to executing the Letter of Agreement . . . ." In numerous communications with Newman, Parsons repeatedly reassured Newman that Clear Channel was going to move forward with the Letter of Agreement. A jury could reasonably infer that Parsons made statements to Newman and the Eon board that Clear Channel would sign the Letter of Agreement, a representation that later proved to be untrue. At the very least, there are disputed issues of material fact as to the alleged promises of Parsons, Eon's action and response thereto, and any inferences that legitimately may be drawn therefrom. Accordingly, Clear Channel's motion for summary judgment will be denied in its entirety.

III

Eon has also moved the court for summary judgment as to Clear Channel's claims for breach of contract and intentional interference with existing or prospective business relationships. Eon first contends that Clear Channel cannot establish a breach of the Services Agreement because there is no uptime requirement. On its face, the Services Agreement provides that Eon "cannot and will not guarantee 100% uptime" of any of its service. The Agreement does not specify what percentage of uptime Eon must provide, and, even if it did, Eon asserts Clear Channel cannot establish what percentage of uptime Eon actually provided.

In response to Eon's motion, Clear Channel submitted evidence that the streaming industry standard for uptime is 99.9 percent. To achieve this standard, a stream cannot be down for more than about eight hours during a year. Eon's bandwidth was down

for more than 63.5 hours during 2005.  Missy Reno testified that most of Eon's streaming failures were across the board and took down all of Clear Channel's stations that were streaming with Eon.  At one point, Eon's stream was down for about two days.  Since switching streaming providers, Reno testified that Clear Channel's stream has never gone down.

In addition, in a single year, Clear Channel submitted evidence that Eon experienced problems with its provision of streaming and relating services to Clear Channel on 166 days.  These problems included streaming service outages, downtime, buffering, dropped and interrupted streams, connection and encoder problems, and reporting and advertisement failures.  From the foregoing, a reasonable jury could conclude that Eon failed to keep its streaming service "up and running," thereby breaching the Services Agreement with Clear Channel.

IV

Eon next contends that Clear Channel's claim for intentional interference with existing or prospective business relationships fails because Clear Channel cannot show evidence of intentional interference by Eon.  Intentional interference with a business relationship requires (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third parties, (2) the defendant's knowledge of that relationship, (3) the defendant's intent to cause the breach or termination of the relationship, (4) the defendant's improper motive or improper means, and (5) damages.  *Trau-Med of Al., Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 701 (Tenn. 2002).  This

tort protects both prospective contractual relations and a continuing business or other customary relationship not amounting to a formal contract. *Id.*

Here, Clear Channel has presented evidence from which a reasonable jury could find that Eon was aware of Clear Channel's existing and prospective business, advertising and sales relationships, and that Eon interfered with these relationships, causing Clear Channel damages. The record shows that Eon misrepresented itself as the exclusive selling agent of Clear Channel's inventory when Eon had no such exclusive arrangement. Clear Channel has also submitted testimony that it was delayed in fully going to market with its streaming product for one year because Eon caused a loss of confidence in Clear Channel's streaming product. Moreover, the record shows that some of Clear Channel's advertising clients cancelled their streaming ads because of Eon's failures. Thus, a reasonable jury could conclude that Eon intentionally interfered with Clear Channel's existing and potential advertisers. Therefore, Eon's motion for summary judgment will be denied in its entirety.

Conclusion

Because material issues of fact exist as to all claims asserted in this case, the parties' motions for summary judgment [Docs. 91, 95] will be denied. The parties will prepare the case for trial.

ENTER:

<u>     s/ Thomas W. Phillips     </u>
United States District Judge